# United States Court of Appeals

### *for the*

# Eleventh Circuit

CASE NO.: 24-11515

CHARLES BLACK,
Plaintiff/Appellant,

v.

ASHLEY REAGLE,
Defendant/Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA, TALLAHASSEE DIVISION
CASE NO.: 4:23-cv-491-AW-MAF

INITIAL BRIEF OF PLAINTIFF-APPELLANT

**JAMES V. COOK, ESQ.**
Florida Bar No. 0966843
**LAW OFFICE OF JAMES COOK**.
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; (850) 561-0836 fax
cookjv@gmail.com

For Plaintiff-Appellant Charles Black

**A.** **Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Eleventh Circuit Rule 26.1-1, the following is an alphabetical list of persons and entities with any known interest in the outcome of this appeal:

1. Black, Charles, Plaintiff/Appellant;

2. Brown, Mallory Bennett, Esq. Thompson, Crawford, Brown and Smiley, P.A., Counsel for Defendant, Florida Department of Highway Safety and Motor Vehicles and DefendantAppellee Ashley Reagle;

3. Cook, James V., Esq., Counsel for Plaintiff/Appellant;

4. Florida Department of Highway Safety and Motor Vehicles, Defendant;

5. Law Offices of James Cook, Counsel for Plaintiff/Appellant;

6. Reagle, Ashley, Defendant/Appellee;

7. Thompson, Crawford, Brown and Smiley, P.A., Counsel for Defendant/Appellee Ashley Reagle;

8. Thompson, Thomas, Esq., Counsel for Defendant, Florida Department of Highway Safety and Motor Vehicles and Appellee Ashley Reagle.

**B.      Statement Regarding Oral Argument**

Appellant does not believe that oral argument is necessary in this case, which turns on the trial court's decision on a Rule 12 motion without any evidence or other matters to be considered outside the four corners of the operative complaint. However, Appellant will gladly participate in oral argument should the Court determine that it would be appropriate in this case.

**C. Table of Contents**

Page

TITLE PAGE ................................................................................. i

A. CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........... ii

B. STATEMENT REGARDING ORAL ARGUMENT .................. iii

C. TABLE OF CONTENTS ........................................................ iv

D. TABLE OF CITATIONS ........................................................ vi

    a. Cases .......................................................................... vi

    b. Statutes ....................................................................... ix

    c. Rules ........................................................................... ix

E. STATEMENT ON ADOPTING BRIEFS OF OTHER PARTIES ........ 1

F. STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ........................ 1

    1. Basis for subject matter jurisdiction in district court and citations to applicable statutory provisions. ........ 1

    2. Basis for jurisdiction in the Court of Appeals with citations to applicable statutory provisions and relevant filing dates ........ 1

G. STATEMENT OF THE ISSUES ........................................... 1

H. STATEMENT OF THE CASE AND FACTS ......................... 2

    1. Course of the Proceedings and Disposition Below ...... 2

    2. Statement of the Facts ............................................. 4

    3. Standard of Review ................................................. 9

I. SUMMARY OF ARGUMENT ............................................ 9

J. ARGUMENT AND CITATIONS OF AUTHORITY ............... 11

**Ground One: The district court erred in granting Appellee Reagle**  12
**qualified immunity on Appellant's unlawful seizure claim where there**
**was no match on key descriptors except the driver's race to create**
**even reasonable suspicion.**

    **A. It was clearly established at the time that an officer could not**
       **detain a suspect without arguable reasonable suspicion.**

    **B. Even if the stop was justified at the inception, any justification**
       **would have been attenuated as officers noted the tag mis-match.**

**Ground Two: The Fourth Amendment's freedom from unreasonable**  21
**seizures includes the right to be free from the use of excessive force in**
**the course of a seizure even if the seizure itself is legitimate.**

**Ground Three: The district court erred in taking facts or inferences in**  23
**movant's favor and drawing inferences from Appellee's statements in**
**Appellee's favor, in deciding that qualified immunity attached**.

K. CONCLUSION  27

L. CERTIFICATE OF COMPLIANCE  28

M. CERTIFICATE OF SERVICE  28

**D. Table of Citations**

| a. | **Cases** | Page |
|---|---|---|

*Adams v. Williams*, 407 U.S. 143 S.Ct. 1921, 32 L.Ed.2d 612 (1972)    17

*Alston v. Swarbrick*, 954 F.3d 1312 (11th Cir. 2020)    22

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010)    26

*Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987)    16

*Batyukova v. Doege*, 994 F.3d 717 (5th Cir. 2021)    16

*Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)    14

*Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015)    26

*Brown v. Illinois*, 422 U.S. 590 (1975)    13

*Cantu v. City of Dothan* , 974 F.3d 1217 (11th Cir. 2020)    16

*Caravello v. American Airlines, Inc.*, 315 F. Supp. 2d 1346 (S.D. Fla. 2004)    26-26

*Coffin v. Brandau*, 642 F.3d 999 (11th Cir. 2011)    15

*Courson v. McMillian*, 939 F.2d 1479 (11th Cir. 1991)    23

*Croom v. Balkwill*, 645 F.3d 1240 (11th Cir. 2011)    23

*Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009)    15

*Davis v. Scheuer*, 468 U.S. 183 (1984)    26

*Elder v. Holloway*, 510 US 510 (1994)    17

*Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005)    9

*Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 WL 563799 (W.D. Tex. Jan. 31, 2020)    23

*Florida v. Bostick*, 501 U.S. 429 (1991)    13, 14

*Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)    14, 21

*Garczynski v. Bradshaw*, 573 F.3d 1158 (11th Cir. 2009)    22

*Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)    22

*Hardigree v. Lofton*, 992 F.3d 1216 (11th Cir. 2021)    22

*Hargis v. City of Orlando*, 586 F. App'x 493 (11th Cir. 2014)    21

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)    12

*Hicks v. Moore*, 422 F.3d 1246 (11th Cir. 2005)    12-13

*Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)    14

*Hunter v. State*, 660 So. 2d 244 (Fla. 1995)    18

*Jackson v. Sauls*, 206 F.3d 1156 (11th Cir. 2000)    12, 21

*Jones v. Walsh*, 711 Fed. Appx. 504 (11th Cir. 2017)    22

*Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020)    16

*Lanfear v. Home Depot, Inc.*, 679 F.3d 1267 (11th Cir. 2012)    15

*Lewis v. City of West Palm Beach*, 561 F.3d 1288 (11th Cir. 2009)    20

*Mercado v. City of Orlando*, 407 F. 3d 1152 (11th Cir. 2005)    15

*Mullenix v. Luna*, 577 U.S. 7 (2015)    16

*Navarette v. California*, 572 U.S. 393 (2014)   14

*Perez v. Suszczynski*, 809 F.3d 1213 (11th Cir. 2016)   11, 16

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998)   23

*Petithomme v. County of Miami-Dade,* 511 Fed.Appx. 966 (11th Cir. 2013)   18-19

*Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)   9

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)   26

*Suttles v. Butler*, 564 F. Supp. 3d 1317 (N.D. Ga. 2021)   16, 17-18

*Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987), cert. denied, 489 U.S. 1065 (1989)   26

*Terry v. Ohio*, 392 U.S. 1 (1968)   13, 17, 18

*United States v. Caraballo*, 595 F.3d 1214 (11th Cir. 2010)   13

*United States v. McCann*, 465 F.2d 147 (5th Cir. 1972), cert. denied sub nom., *Kelly v. United States*, 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973)   17

*United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)   13, 18

*United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234 (11th Cir. 1999)   26

*United States v. Pruitt*, 174 F.3d 1215 (11th Cir. 1999)   21

*United States v. Rias*, 524 F.2d 118 (5th Cir. 1975)   19

*Waldman v. Comm'r*, 871 F.3d 1283 (11th Cir. 2017)   26

*Williams v. City of Birmingham*, 2:16-CV-0650-JEO, 2019 WL          19
11679764 (N.D. Ala. Apr. 23, 2019), aff'd sub nom. *Williams v.*
*Aguirre*, 965 F.3d 1147 (11th Cir. 2020)

*Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995)          22

**b.    Statutes**

28 U.S.C. § 1291          1

28 U.S.C. § 1331          1

42 U.S.C. § 1983          1

**c.    Rules**

11th Cir.R. 28-5          1

Fed.R.App.P. 32          28

## E. Statement on Adopting Briefs of Other Parties

Appellant does not adopt the briefs of other parties.

## F. Statement of Subject Matter and Appellate Jurisdiction[1]

### 1. Basis for subject matter jurisdiction in district court

The district court had jurisdiction over the federal constitutional claims brought by Appellants under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331.

### 2. Basis for jurisdiction in the Court of Appeals

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court granted Appellee's motion to dismiss the federal counts in the operative second amended complaint ("SAC") (ECF 21) and remanded the state counts to state court. (ECF 24) Judgment was entered April 12, 2024 (ECF 23). The notice of appeal was timely filed on May 9, 2024. (ECF 25).

## G. Statement of The Issues

1. Whether the district court erred in dismissing Appellant's Fourth Amendment unlawful seizure claim under qualified immunity where the vehicle and driver seized did not match the description of the vehicle and driver sought, the Appellant did not attempt to flee, did not appear to be involved in criminal activity and did not appear to constitute a danger to

---

[1] Pursuant to Eleventh Circuit Rule 28-5, references to the record on appeal will be "ECF" for Docket Entry, followed by the appropriate document number, followed by "at," followed by the respective page number (if appropriate).

the officer or any other person, and where the trial court considered inferences in favor of the moving party, not Appellant.

2. Whether the district court erred dismissing Appellant's Fourth Amendment excessive force claim under qualified immunity where the facts as pleaded demonstrated that Appellee pointed his firearm at Appellant, who did not match the suspect's description and whose vehicle had the license plate from a different state, without justification.

3. Whether the district court erred taking facts or inferences from the moving party and in favor of the moving party, erred in observing, sua sponte, that license tags are "easily changed," and by drawing, sua sponte, an inference from a comment by the Appellee that was favorable to the Appellee, as movant, to the effect that there must have been an interest expressed by the Leon County Sheriff's Office in stopping a vehicle that was similar to Appellant's vehicle..

## H. Statement of The Case and Facts

## 1. Course of the Proceedings and Disposition Below

This case was brought under 42 U.S.C. § 1983 and Florida tort law on September 18, 2023, in the Second Judicial Circuit for Leon County, Florida. On November 10, 2023, Defendant Florida Department of Highway Safety and Motor Vehicles (DHSMV) and Appellee Trooper Ashley Reagle removed the action to

the United States District Court for the Northern District of Florida, Tallahassee Division. (ECF 1). On November 13, 2023, Appellee Reagle filed an Amended Petition for Removal. (ECF 5). On the same date, Appellee filed a Motion to Dismiss (ECF 6). On November 14, 2023, the Court entered an Initial Scheduling Order. (ECF 7). On November 27, 2023, the Appellant filed a Response (ECF 9) to the Appellee's Motion to Dismiss. On December 1, 2023, the Court entered an Order granting in part Appellee's Motion to Dismiss, dismissing Count II for false arrest under 42 U.S.C. § 1983, and Count III for intentional infliction of emotional distress, ordering Defendant DHSMV to file an answer as to Count I for false arrest under Florida law, and granting Appellant leave to amend. (ECF 10).

On December 15, Appellant filed an Amended Complaint for Damages. (ECF 13). On December 21, 2023, Appellee moved to dismiss Counts II and III of the Amended Complaint,. (ECF 14). Appellee contemporaneously answered the Amended Complaint. (ECF 15). On January 4, 2024, Appellant responded to the second Motion to Dismiss. (ECF 16). On February 13, 2024, the district court dismissed the federal Counts II and III and gave Appellant leave to amend. On February 27, Appellant filed the operative Second Amended Complaint, adding a count for Excessive Force. (ECF 18). On March 8, 2024, Appellee filed a Motion to Dismiss Appellant's SAC with prejudice. (ECF 19). On March 22, 2024, Appellant responded to Appellee' Motion to Dismiss. (ECF 20). On April 4, 2024,

the district court granted the Motion as to the two federal claims on the basis of qualified immunity and remanded the state claims to state circuit court. On April 12, 2024, the Clerk entered final judgment for Appellee. (ECF 23). On May 9, 2024, Appellant timely filed a Notice of Appeal. (ECF 25).

## 2. Statement of the Facts.

On February 6, 2021, Appellee Charles Black, Jr. was driving a gray 2020 Mitsubishi Outlander, with a Mississippi tag, number RAN4356, in Tallahassee, Florida. (ECF 18 at ¶ 10). Appellee Black had gone to a fast-food restaurant to pick up food. (Id. at ¶ 11). At about 1:00 a.m., Mr. Black was returning to a Tallahassee apartment complex where he had been visiting. (Id. at ¶ 12). On this date and time, Appellee Florida Highway Patrol Trooper Ashley Reagle came up behind Black and began following him. (Id. at ¶ 13). Trooper Reagle was seeking a vehicle similar to Black's but with a South Carolina tag and a different tag number currently unknown to Appellant. (Id. at ¶ 14). The radio traffic indicated that minutes earlier the vehicle sought was seen driven by a black male in a white shirt and pink hat who had run through stop signs. (Id. at ¶ 15). The radio traffic indicated that there had been no pursuit of the vehicle. (Id. at ¶ 16). Mr. Black was driving a car "similar" to the car sought and wearing different clothing – a gray sweater and black pants and no hat. (Id. at ¶ 17).

When Appellee Reagle began following Appellant Black, Black did not

speed or drive evasively. (Id. at ¶ 18). Black's tag lights were properly illuminating the tag and Appellee Reagle's view of the numbers on the license tag was unobstructed. (Id. at ¶ 19). As Trooper Reagle came up behind Black, he would have seen that Black's vehicle had a Mississippi tag and the tag number RAN4356 (Id. at ¶ 20). Appellee Reagle would have seen that Black's tag state and number were different from the tag and number of the vehicle he was seeking. (Id. at ¶ 21).

Black stopped to enter the gate code at the gated complex he was visiting. (Id. at ¶ 24). As the gate opened, Appellee Reagle turned on his lights and siren. (Id. at ¶ 25). Black pulled through the open gate into the lot and out of the path of traffic at a safe location within seconds of the first indication that Officer Reagle intended to stop him. (Id. at ¶ 26).

Appellee Reagle's stop completely restrained Black's liberty and he had no basis to feel free to terminate the encounter. (Id. at ¶ 27). Appellee Reagle exited his patrol car, immediately and excitedly confronted Black with a loaded firearm pointed directly at Black. (Id. at ¶ 28). Black had not attempted to flee, did not appear to be in the commission of a serious crime, and gave no basis for articulable suspicion that he had done so or that he was armed and dangerous. (Id. at ¶ 29).

Reagle offered no explanation for the stop but simply shouted orders. (Id. at ¶ 30). Black, a college student, who was home temporarily after attending college in California on a golf scholarship, was understandably frightened. (Id. at ¶ 31).

Black was entirely compliant with commands as he stepped from his car, moving carefully, with his hands raised and open to show he had no weapon. (Id. at ¶ 32). Black's gray sweater and black slacks were reasonably close-fitting and would not have been likely to conceal a dangerous weapon. (Id. at ¶ 33). There was no basis to believe Black was armed or had access to a weapon either from his person or from his vehicle. (Id. at ¶ 34). Black, obediently, but trembling and crying, followed all orders but repeatedly asked why he was being stopped, with no response from Reagle. (Id. at ¶ 35). Black repeatedly asked why he was stopped and said that they must have the wrong person and that he had done nothing wrong. (Id. at ¶ 36). A second officer came up and roughly cuffed Appellant Black's hands behind his back. (Id. at ¶ 37).

Other officers present mentioned Black's car had the wrong tag. (Id. at ¶ 38). Black heard an officer state that the vehicle sought had a South Carolina tag but the stop was prolonged even after the discrepancy was verbally pointed out. (Id. at ¶ 39). Trooper Reagle continued to keep Mr. Black for about 30 minutes until a Leon County Deputy arrived to further inform Reagle he was holding the wrong person. (Id. at ¶ 40). Reagle was already aware of the mis-match of the driver and vehicle and the descriptors given. (Id. at ¶ 41). Even if there had been a basis for a "brief investigatory stop," the detention, under the circumstances, far exceeded the time necessary, even if articulable suspicion had been present. (Id. at ¶ 42). The

detention was longer than would have been necessary to write a ticket or check the tag or otherwise effectuate any lawful purpose of the stop. (Id. at ¶ 43). Even after one or more officers present pointed out that the vehicle had a different tag than the vehicle sought and that Appellant Black did not match the description of the driver, Reagle persisted in the seizure. (Id. at ¶ 44).

Only Counts II and III of the then-operative SAC are at issue on appeal.

As Count II, Appellant pled Unlawful Seizure under 42 U.S.C. § 1983 against Appellee Reagle. He pled that he was entitled to relief against Reagle in that he intentionally and unlawfully caused him to be imprisoned against his will in violation of the Fourth Amendment to the U.S. Constitution. (Id. at ¶ 62). He pled that Appellee used words to the effect that Appellant was not free to move freely which implied threats of force, as well as actual force, and immediate means of coercion against Appellant, so that Appellant was deprived of liberty at all times as effectively as if behind prison bars. (Id. at ¶ 63). Appellant Black pled that his detention of Black was unlawful and that his prolonged detention after it was abundantly clear there was no basis to justify the stop, was unlawful under any interpretation of the Fourth Amendment. (Id. at ¶ 64). At the time of the stop it was clearly established that the stop of a person without probable cause or articulable suspicion, who was not violating the law, and who did not appear to be armed and dangerous violated the constitution. (Id. at ¶ 65).

Appellant Black pled that Appellee Reagle clearly would have seen that the tag number and state were not consistent with the vehicle sought for a high-risk stop. (Id. at ¶ 66). Appellee Reagle did not have articulable suspicion that Black was violating the law or that he was armed and dangerous. (Id. at ¶ 67). Appellee Reagle clearly knew that the stop was improper but followed through with the stop while displaying deadly force regardless. (Id. at ¶ 68). Rather than admit error, Appellee Reagle decided to continue the unlawful stop and wait for a local Deputy to come and tell him to release Black. (Id. at ¶ 69).

Appellant pled that at the time of the stop, it was clearly established that a vehicle stop could not be perpetuated after it was clear there was no basis for probable cause that the subject had committed a felony or serious offense nor any basis for reasonable suspicion that he was involved in criminal activity or that he was armed and dangerous. (Id. at ¶ 70). Appellee misused his power, possessed by virtue of state law and made possible only because Appellee was clothed with the authority of state law and was actionable under 42 U.S.C. 1983. (Id. at ¶ 71).

As Count III, Appellant pled Excessive Force under 42 U.S.C. § 1983. Appellant pled that he was entitled to relief against Appellee Reagle for violating the Fourth Amendment to the U.S. Constitution through intentional use of excessive force. (Id. at ¶ 76). Reagle's decision to point a gun at Appellant, an unarmed vehicle driver, absent evidence of a serious crime, who objectively posed

no danger to Appellee Reagle or any other officer or the public, gives rise to a constitutional claim of excessive force. (Id. at ¶ 77). At the time of the stop, the act of pointing a gun at a driver was clearly established as a "use of force," which may be excessive depending on the severity of the crime, the immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. (Id. at ¶ 78).

Appellant pled that Appellee Reagle clearly saw that the tag number and state were not consistent with the vehicle sought for a high-risk stop and that Black was not armed or posing a danger to Trooper Reagle or any other person and was not attempting to flee. (Id. at ¶ 79). Appellee Reagle clearly knew that the stop was improper but followed through with the stop while displaying deadly force regardless. (Id. at ¶ 80).

### 3. Standard of Review.

An appellate court reviews a district court order granting a motion to dismiss de novo, "applying the same standard as the district court." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Further, whether an official has arguable reasonable suspicion or probable cause is a question of law also reviewed de novo. *See Evans v. Stephens*, 407 F.3d 1272, 1280 (11th Cir. 2005) (en banc).

## I. Summary of the Argument

The district court erred in granting Appellee Reagle qualified immunity.

Appellant Black's right against an unjustified seizure without a warrant, without probable cause or even reasonable suspicion was clearly established at the time of his seizure by Appellee Reagle when Black was subjected to verbal orders at gunpoint and roughly handcuffed behind his back.

Appellee lacked "specific and articulable facts" that would justify a person of "reasonable caution" to believe the seizure was appropriate. Black's vehicle did not match the description of the vehicle sought and Black did not match the description of the vehicle's driver, other than the fact of being African-American. The only descriptor, other than his race, was the clothing of the driver of the sought vehicle which did not match Black's clothing. There is no evidence of an attempt to evade arrest by flight; there was no observation of suspected criminal activity, and there was no indication of dangerousness to the officer or others. During the detention one or more officers mentioned the fact that the tag didn't match.

Numerous cases at the time of the stop clearly established Appellant's rights against even an investigatory stop where there was no more than a generic similarity with a vehicle sought (and notably in this case where the license plate and driver descriptors observably did not match) and where the description of the driver did not match Appellant. The fact mere fact that a driver is African-American fails to justify either an arrest or an investigatory stop.

The Fourth Amendment requirement of "reasonableness" has been

interpreted to apply not just to the seizure itself, but the *manner* of the seizure. Here, the application of armed force was of a person who made no attempt to evade arrest by flight and for whom there was no observation of criminal activity or indication of dangerousness. In the absence of these factors, there is no separate basis for an armed stop even if there had been a basis for a brief investigative stop.

On a Motion to Dismiss, all facts and inferences from those facts must be taken in the light most favorable to the non-moving party. The facts must be "properly supported by the record." They must normally be drawn from the four corners of the complaint. Here, the district court erred in supplying facts or inferences or taking them from the movant and in favor of the movant. The district court erred in observing, *sua sponte*, that license tags are "easily changed."

## J. Argument and Citations

The district court dismissed Appellant's federal claims reasoning as follows:

There are three avenues for a plaintiff to show a right was clearly established. Id. (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016)). He may identify "case law with indistinguishable facts clearly establishing the constitutional right." *Id.* He may point to "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right." Id. Or he may show "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id*. Black has done none of these.

First, he has not shown case law with indistinguishable facts. In opposing qualified immunity, he argues only in the most general terms that there were constitutional violations. *Cf. id.* (explaining that "'clearly established law' must be 'particularized' to the facts of the case, and must not be defined 'at a high level of generality'" (citations

omitted)). Second, he has not shown any broad principle "that clearly establishes" a violation here. He argues that the facts did not provide a legitimate basis for the traffic stop or for holding Black afterward, but that is not enough. To the extent he argues that the drawing of the firearm was itself excessive force in this situation (he does not allege use of physical force), he has not shown any broad principle clearly covering the facts alleged here. Last, the conduct alleged was not so egregious that any officer would know it constituted a constitutional violation even without case law.

(ECF 21 at 3-4). For the reasons stated below, the trial court erred in granting

qualified immunity on each of Appellant's federal claims.

## I. __The district court erred in granting Appellee Reagle qualified immunity on Appellant's unlawful seizure claim where there was no match on key descriptors except the driver's race to create even reasonable suspicion.__

Qualified immunity protects government officials performing discretionary

functions from civil liability if their conduct violates no "clearly established

statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When an official, like Appellee, asserts qualified immunity for an alleged

Fourth Amendment violation involving unlawful seizure, the question is not

whether the official had actual reasonable suspicion or probable cause, but whether

the official had "arguable" reasonable suspicion or "arguable" probable cause, as

the case may be. *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000). Courts

consider this as "an objective question viewed from the standpoint of a reasonable

official at the scene" and based on the totality of the circumstances. *Hicks v.*

*Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005) (quotation and internal marks omitted). To determine what is reasonable in that context, a court considers the totality of the circumstances "in light of the officer's experience" and determines "whether the officer can point to specific and articulable facts which, taken together with rational inferences from those facts" support an "objectively reasonable suspicion that [the defendant] had engaged ... in a crime." *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010).

Under the Fourth Amendment, an official can address questions to a person at any time, and that person is free "to ignore his interrogator and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). A seizure takes place "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16 (1968).

The Supreme Court has identified three categories of police-citizen encounters in determining which level of Fourth Amendment scrutiny to apply: (1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny, *Florida v. Bostick*, 501 U.S. 429 (1991); (2) legitimate and restrained investigative "*Terry*" stops short of arrests to which limited Fourth Amendment scrutiny is applied, *Terry*, 392 U.S. at 1; and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny, *Brown v. Illinois*, 422 U.S. 590 (1975). As to the two types

of Fourth Amendment seizure, in this case the facts and circumstances are not "sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), nor "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014), necessary for a finding of reasonable suspicion.

Though reasonable suspicion is a less demanding standard than probable cause, the Fourth Amendment nonetheless requires a minimum level of objective justification for an official to make a *Terry* stop. *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000). This objective justification must exist at the onset of the stop. *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 188, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). Objective justification does not exist based on a mere refusal to cooperate with the official. *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (stating that a person approached by the police may decline to listen to the questions and go on his way without furnishing the necessary objective grounds for reasonable suspicion).

To elucidate whether a plaintiff has established that there was no arguable reasonable suspicion or probable cause, this Court has determined that a plaintiff may establish that a right is clearly established if he shows: (1) "that a materially

similar case has already been decided, giving notice to the police;" (2) "that a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F. 3d 1152, 1159 (11th Cir. 2005). In performing the qualified immunity analysis, courts in the Eleventh Circuit look only to binding precedent from the U.S. Supreme Court, the Eleventh Circuit, and the state supreme court to determine whether the asserted constitutional right was clearly established at the time of the stop. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

Here, the trial court erred in determining that Appellant had not established that Appellee was not entitled to qualified immunity, drawing all inferences in favor of Appellant based on the four corners of the then-operative SAC.

With *de novo* review and considering the facts asserted in the SAC in the light most favorable to Appellant, not Appellee, this Court should find that, at least at this stage, Appellee cannot invoke qualified immunity. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quotation omitted); *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009) (allegations accepted as true and in light most favorable to plaintiff when reviewing district court's grant of qualified immunity at the motion to dismiss stage).

### A. It was clearly established at the time that an officer could not detain a suspect without arguable reasonable suspicion.

The trial court erred in determining that qualified immunity attached as to Appellant's unlawful seizure claim on the ground that the right to be free from unreasonable seizure in this context was not clearly established.

*Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016), uses the words "[c]ases with indistinguishable facts" to describe the basis for showing that a legal principle is "firmly established." Cases also use the term "close factual fit," *Suttles v. Butler*, 564 F. Supp. 3d 1317, 1326-27 (N.D. Ga. 2021), or "factually similar," *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020)). Although a "case directly on point" is not always necessary to pierce qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). There seems to be no rule that <u>all</u> the facts appear in one case. However, a "close factual fit between the pre-existing case and the present one is essential," and "[g]eneral propositions from earlier decisions will not do." *Cantu v. City of Dothan* , 974 F.3d 1217, 1232 (11th Cir. 2020). "[C]learly established law" must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

A close factual fit is especially important in the Fourth Amendment context, where ... it is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts." *Suttles v. Butler*,

564 F. Supp. 3d 1317, 1326-27 (N.D. Ga. 2021). Clearly established law may derive from multiple sources. *See Elder v. Holloway*, 510 US 510. 512 (1994), "appellate review of qualified immunity dispositions is to be conducted in light of all relevant precedents, not simply those cited to, or discovered by, the district court."

Courts have recognized the right of a police officer to stop and detain an individual under certain circumstances. *See, e.g., Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. McCann*, 465 F.2d 147 (5th Cir. 1972), cert. denied sub nom., *Kelly v. United States*, 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973). Circumstances required to justify a stop, however, must be sufficient to enable a police officer reasonably to suspect that the particular individual is involved in criminal activity. *United States v. McCann, supra, at 158*; see *Terry, supra*, 392 U.S. at 30, 88 S.Ct. 1868. In the instant case, the facts known to the Appellee at the time he stopped the Appellant clearly did not rise to the required level, and in reality were so tenuous as to provide <u>no grounds</u> whatsoever for suspicion—the cars had different license plates and the suspect and Appellant were wearing different clothes. The Appellee would have known *ab initio* that he was stopping a similar vehicle with a different tag number from a different state and that the physical description of the driver did not match the information given except to the extent that the driver was African-American.

"Several factors are relevant in assessing the legitimacy of a vehicle stop pursuant to a BOLO: (1) the length of time and distance from the offense; (2) route of flight; (3) specificity of the description of the vehicle and its occupants; and (4) the source of the BOLO information." *Hunter v. State*, 660 So. 2d 244, 249 (Fla. 1995). The law was clearly established that race alone cannot be the basis of a vehicle stop where there was no further physical description of the driver, the clothing was different, and the undefined "similarity" two vehicles cannot fill the void where the similarity is undefined and the vehicle bore a different license tag.

In the absence of a formal arrest, whether a person has been seized will be adjudged in accordance with the reasonable person standard initially articulated by the United States Supreme Court in *United States v. Mendenhall*. 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (plurality opinion) ("We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained...."). Under *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court concluded the legality of an investigatory stop is the existence of reasonable suspicion that is based upon "specific and articulable facts" and whether the facts available to the officer at the moment of the seizure would warrant "a man of reasonable caution in the belief that the action taken was appropriate." *Id*. at 21-22.

In *Petithomme v. County of Miami-Dade*, 511 Fed.Appx. 966, 973 (11th Cir.

2013) police were not entitled to qualified immunity for seizure of a woman sitting in her car in her driveway where the woman and her car did not match a description reported relating to a "suspicious vehicle." In *Williams v. City of Birmingham*, 2:16-CV-0650-JEO, 2019 WL 11679764, at *17 (N.D. Ala. Apr. 23, 2019), aff'd sub nom. *Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020), the court denied qualified immunity to officers for seizure of two men who clearly did not match the physical description of the suspects in a robbery in any material way, other than that the rather generic fact they were "two African-American males traveling on foot."

In *United States v. Rias*, 524 F.2d 118, 121 (5th Cir. 1975), the officer stopped two black males on the information that an automobile used in a series of robberies was black or blue. The suspects made no attempt to flee. The officer simply stopped them because they were two black males in a black Chevrolet. The court found that this fact alone, without additional reliable evidence sufficient to warrant the conclusion that either or both of the men had been or were involved in criminal activity, did not constitute cause to stop the vehicle. In the instant case the description of the car was similarly generic but stop was all the less reasonable because the tag did not match and the physical description of the driver did not match the driver seized except to the extent that he was African-American.

The seizure in this case was "unwarranted" in both the legal and the factual sense. The vehicle in question was similar to hundreds of vehicles in the community

but the license plate of the vehicle sought was for a different license number and a different state. The driver did not match the description of the driver sought except to the extent that he was African-American, like thousands of drivers.

Could Trooper Reagle have reasonably believed that he was acting within the Constitution when he stopped a car with the wrong plate number from the wrong state with a driver whose appearance did not match the person sought except to the extent that he was Black? There is good precedent in most circuits saying that you don't always need "indistinguishable facts" for the law to be clearly-established even under the "traditional" version of qualified immunity, and that you don't need a case at all if it's an "obvious" constitutional violation. Appellant adequately pled that Appellee Reagle's conduct was so egregious that a constitutional right was clearly violated, even in the total absence of case law. *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009). At this stage of the proceedings it cannot be said that a reasonable jury could not so find.

### B. Even if the stop were justified at the inception, any justification would have been attenuated as officers discussed the tag mis-match.

Trooper Reagle continued to keep Mr. Black for about 30 minutes until a Leon County Deputy arrived to further inform Reagle he was holding the wrong person. (ECF 18 at ¶ 40). Appellee argued that under the circumstances a detention of 30 minutes was "no longer than necessary" to determine whether Appellant was the driver of a car that ran the stop signs. Appellee argued that there was, therefore,

"legal authority" for the stop and detention for up to 30 minutes based on the similarity of the driver (African-American male) and a vehicle "similar to the car sought." But that is not what the SAC pleaded. It pleaded that Appellee could see that the license tags were from different states and had different numbers and that Appellant was in different clothing. (ECF 18 at ¶¶ 15-21). And even if Appellee did not see it right away, which is not what is pleaded, Appellee was told by fellow officers that the license plate did not match, but continued to detain Appellant nevertheless. (Id. at ¶¶ 38-41). "It is well established that 'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *Hargis v. City of Orlando*, 586 F. App'x 493, 499 (11th Cir. 2014) (quoting *Jackson*, 206 F.3d at 1165). Reasonable suspicion of criminal activity must exist at the time that the officer makes the stop, and cannot be based on facts that he discovers thereafter. *United States v. Pruitt*, 174 F.3d 1215, 1221 n.4 (11th Cir. 1999). A stop that is justified by reasonable suspicion nevertheless may become unlawful if it lasts "longer than is necessary to effectuate the purpose of the stop." *Pruitt*, 174 F.3d at 1220 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

## II. The Fourth Amendment's freedom from unreasonable seizures includes the right to be free from the use of excessive force in the course of a seizure even if the seizure itself is legitimate.

The trial court also erred when deciding that Appellant had not established

that, based on the facts pleaded in the operative SAC, he had stated a claim for excessive force based on clearly established law. "[R]easonableness" has been interpreted to apply not just to the seizure itself, but the *manner* of the seizure. Here, the application of armed force as to a person who made no attempt to evade arrest by flight and for whom there was no observation of criminal activity or indication of dangerousness to the officer or others.

To the extent the Court determines that Appellant's unlawful seizure claim survives, then the excessive force claim should also necessarily survive to the extent it is subsumed into the unlawful seizure. *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 1995) (holding that a claim that any force during a false arrest is excessive is subsumed in the false arrest claim itself because damages for false arrest include damages for use of force to effect that false arrest); *Alston v. Swarbrick*, 954 F.3d 1312, 1319-20 (11th Cir. 2020).

The Fourth Amendment's freedom from unreasonable seizures includes the "right to be free from the use of excessive force in the course of an arrest." *Hardigree v. Lofton*, 992 F.3d 1216, 1231 (11th Cir. 2021); *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). An officer's display of their weapon and threat to use force is analyzed under the Fourth Amendment to determine whether it is reasonable conduct. *Jones v. Walsh*, 711 Fed. Appx. 504, 507 (11th Cir. 2017).

When an officer draws a weapon, it must be reasonably necessary for protection or maintenance of order. *Id.* (citing *Courson v. McMillian*, 939 F.2d 1479, 1494-95 (11th Cir. 1991)). An officer's display of a weapon and threat of force is unreasonable when not necessary based on the nature of the stop. *Croom v. Balkwill*, 645 F.3d 1240, 1252 n.17 (11th Cir. 2011) (citing, *inter alia*, *Petta v. Rivera*, 143 F.3d 895, 905 (5th Cir. 1998)).

There is a robust consensus across circuits that an officer who brandishes a weapon at a bystander or compliant subject is objectively unreasonable under the *Graham* factors. *Flores v. Rivas*, No. EP-18-CV-297-KC, 2020 WL 563799, at *8-9 (W.D. Tex. 2020) (denying qualified immunity based on clearly established precedent that brandishing a gun at a compliant person is excessive force.

Here, the facts as pleaded support that Appellee knew or should have known that Appellant was not the suspect, yet he pointed his firearm at Appellant, who was compliant, with no basis whatsoever. As pleaded, Appellant has articulated an excessive force claim based on clearly established law.

## III. **The district court erred in taking facts or inferences in movant's favor, observing, sua sponte, that license tags are "easily changed," and in drawing inferences from Appellee's statements in Appellee's favor, in deciding that qualified immunity attached**.

Keeping to the pled facts, a black male driver, of undetermined age, build, complexion, hair type, and different clothes, driving a "similar" vehicle with a *different tag from a different state*, cannot support probable cause or arguable

probable cause or even reasonable suspicion under clearly established law. Although inferences can be raised to explain differences in clothing or license tag, the inferences must be raised in favor of the plaintiff at the pleading stage.

At the district court, Appellee argued that the difference in clothing and the different license tag were not "determinative." (ECF 19 at 4). However, the issue at the pleading stage is not whether the facts pled are "determinative," but whether they are plausible. In the SAC, Appellant alleged that he was driving a vehicle with a Mississippi tag, number RAN4356. (ECF 18, ¶ 10), and that the officers were seeking a vehicle with a South Carolina tag with a different number. (*Id.* at ¶ 14). Appellant also alleged that officers present remarked that Appellant's car had the wrong tag number. (*Id.* at ¶ 38). Even after others pointed out to Appellee that the the license plates were completely different, Appellee continued to hold Appellant until a deputy from the Leon County Sheriff's Office arrived and told Defendant what he already knew, that he had stopped the wrong vehicle. (*Id.* at ¶ 40).

In his final Motion to Dismiss (ECF 19), the Appellee paraphrased the district court's own inference drawn *sua sponte* in its Order on the Motion to Dismiss the first amended complaint to the effect that license tags "are easily switchable." (ECF 19 at 3-4).[2] The Appellee added in the same vein that "clothes are easily changed,

---

[2] The district court actually held, "This is not enough to plausibly allege Reagle lacked arguable probable cause. *License plates are easily changed*, and a different tag number, in and of itself, is not determinative of probable cause. (*emphasis*

the hat taken off, the sweater could even be pulled over the white shirt." (ECF 19 at

4). But these are self-serving inferences favoring the movant for which there are no

facts alleged. The only information about time frames that was pled is that the car

sought had been spotted "minutes earlier." (ECF 18, SAC, at ¶ 15). Otherwise, no

such facts are present here. These are self-serving inferences drawn in an absence of

facts and they are drawn strongly in favor of the moving party.

Other purported facts were gleaned by the district court from the Appellee's

motions to dismiss such as that Black "was pulled over on the belief that he was

someone that the Leon County Sheriff's Office was looking for." (ECF 10, First

Order Granting Dismissal, at 2, quoting ECF 6, Appellee's First Motion to Dismiss,

at 3). The district court takes this statement by Appellee as if it were an admission

by Appellant. For all that this unpled allegation may turn out to be true, it was a

statement by Appellee, not by Appellant. And, again, it is not taken in the light most

favorable to the non-moving party.

A comment by a moving party does not become part of a complaint. The

complaint must contain "enough facts to state a claim to relief that is plausible on

---

*added*)" (ECF 17 at 4). But although this is stated as if it were a universal truth, it
makes assumptions that are favorable to Appellee. Moreover, a tag might be firmly
attached by four rust-bound screws and a metal frame. There may be limiting time
factors as here, where the car and driver described had been seen "minutes earlier."
(ECF 18, SAC, at ¶ 15.). Whatever the provenance of the inference, whatever facts
it may be based on, it is not taken in the light most favorable to Appellant.

its face," *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015), to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Waldman v. Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017). This threshold "is not akin to a 'probability requirement'" — the plaintiff must merely allege "'enough fact to raise a reasonable expectation that the discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010). Factual content must allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Waldman*, 871 F.3d at 1289. In deciding a motion to dismiss, the Court's analysis is limited to the four corners of the plaintiff's complaint. *Caravello v. American Airlines, Inc.*, 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004). A court must accept a plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Id.* (citing *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)). The issue to be decided by the Court is not whether a plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scheuer*, 468 U.S. 183 (1984); *Taylor v. Ledbetter*, 818 F.2d 791, 794 n. 4 (11th Cir. 1987), cert. denied, 489 U.S. 1065 (1989).

Appellee's arguments in the lower court that Appellant's claim to relief was not "plausible on its face" were themselves conclusory. Appellee submitted that

the fact of different clothing worn by the driver, like the different state license plate and different license plate number, were not "determinative," because both clothing and license tags can be "easily changed." But this allegation is far outside the four corners of the complaint. And it is important to note that the trial court accepted these inferences in favor of Appellee and failed to consider the facts in the light most favorable to Appellant—that Appellee knew that he had the wrong person but pointed his firearm at that wrong person and detained him not just initially but even after his fellow officers told him they had the wrong car.

To seek to justify the armed stop, Appellee posited at the trial court that the suspect sought had fled or attempted to elude a law enforcement officer. However, there are no facts pled to justify that conclusion. It was only pled that there was no chase of the undescribed stop sign-running vehicle. There are no facts to suggest Appellant was "actively resisting arrest or attempting to evade arrest by flight."

Appellee sought to import helpful but unpled facts into its motion to dismiss and claim inferences most favorable to Appellee's own defenses. The trial court accepted that in determining the first amended complaint failed to state a claim, rather than viewing the facts in the light most favorable to Appellant. In the final order of dismissal, the trial court did not repeat those inferences, but they certainly pervade the analysis as Appellee repeated them in the motion to dismiss the SAC.

**K. Conclusion**

Based on the argument and citations to authority, the proper remedy is to vacate the judgment and remand the case for further proceedings.

**L.  Certificate of Compliance**

Undersigned counsel hereby certify pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) that the Initial Brief complies with the type-volume limitation. The number of words in the Initial Brief is 7,312.

**M.  Certificate of Service**

I HEREBY CERTIFY a true and correct copy of the foregoing was served electronically on August 22, 2024, and by mail on:

> Thomas R. Thompson, Esq.
> Thompson, Crawford, Brown & Smiley, P.A.
> 1330 Thomasville Road
> Tallahassee, FL 32303
>
> Respectfully submitted,
>
> s/JAMES V. COOK
> Law Office of James Cook
> 314 West Jefferson Street
> Tallahassee, Florida 32301
> (850) 222-8080/fax (850) 561-0836
> FL Bar No. 966843
>
> Counsel for Appellant